Wing *v.* McDowell; Simmons *v.* McDowell.

Walker.
1   175
75    49
75    51
---
1w175
112   325
---
1w  175
129  ¹118
---
1w  175
132  ¹132
---
1w  175
145  ¹655
---
1w  175
f149  ¹444

WARNER WING, WOLCOTT LAWRENCE *et al. v.* CHRISTOPHER McDOWELL AND JOHN SIMMONS, JR.

JOHN SIMMONS, JR. *v.* CHRISTOPHER McDOWELL *et al.*

In equity, a vendee, under a contract for the sale of lands, is considered as a trustee of the purchase money for the vendor, who is regarded as a trustee of the land for the former. The land is in equity the property of the vendee, who may dispose of, or encumber it in like manner with land to which he has the legal title, subject to the rights of the vendor under the contract.

The registry of an instrument not required by law to be recorded, is notice to no one.

Where a person mortgages lands which he holds under a bond for a deed, he conveys thereby no legal interest in the bond, but only an equitable interest, and the registry of such mortgage is notice to no one.

Where the equities of parties are equal, and neither has the legal title, the prior equity will prevail. Nor will a subsequent obtaining of the legal title in right of another and not in one's own right, or with notice of the prior equity, aid the holder of the postponed equity.

The English doctrine of tacking mortgages has not been adopted in this country.

HEARING on original and cross-bills.

The original bill was filed to foreclose a mortgage executed by McDowell to Lawrence, in July, 1839, and assigned by Lawrence to Wing, in trust to pay certain creditors, and to account to Lawrence for the balance.

The cross-bill was filed to foreclose two several mortgages executed by McDowell to Simmons;—one in September, 1838, for $3,000, on a part only of the premises covered by Lawrence's mortgage, and the other in November, 1839, on the whole of the premises. This last mortgage to Simmons was given to secure the payment of the $3,000 mentioned in the first mortgage to him, and $700 subsequently advanced by him to McDowell. The object of the cross-bill was to have that part of the premises in-

cluded in the mortgage to Simmons for $3,000 sold separately, and the $3,000 first paid out of the proceeds. The facts were these: Lawrence was the owner in fee simple of a farm of one hundred and fifty acres, in the town of Raisinville, in the county of Monroe, on which were a saw-mill and water power. June 12th, 1838, he agreed to sell to McDowell for $500, that part of the farm subsequently mortgaged by the latter for $3,000 to Simmons, and took his two promissory notes for $250 each, payable with interest, one in a year, and the other in eighteen months, and gave McDowell a bond in the penal sum of five thousand dollars, for a deed, on his paying the notes, and erecting and putting into operation a paper-mill on the premises, within a year from that time. McDowell took possession of the premises, and, within the year, erected and put into operation the paper-mill; and, September 8th, 1838, executed the mortgage to Simmons, for $3,000, which was acknowledged and recorded on the same day.

August 31st, 1838, Lawrence conveyed the balance of the farm to one William Tuthill, and took back a mortgage from Tuthill, for $1,950. Tuthill, February 7th, 1839, sold and deeded seven acres of the land purchased of Lawrence, including the saw-mill and water power, to McDowell, for $11,500, and took from McDowell a bond and mortgage, of the same date, for the payment to himself of $9,-476.52, and to Lawrence of the $1,950 mortgage, executed to him by Tuthill. This mortgage covered not only the premises conveyed to McDowell by Tuthill, but also the premises which Lawrence had bound himself by his bond to convey to McDowell, and which had been mortgaged by McDowell to Simmons. The mortgage was recorded March 14th, 1839, and, on the twenty-fifth day of the same month, the mortgage and bond were assigned by Tuthill

to Lawrence, and the assignment was recorded on the third day of July following. Neither Tuthill nor Lawrence, at this time, had any knowledge of Simmons's mortgage, or that he was in any way interested in the premises which Lawrence was to convey to McDowell. Afterwards, Lawrence, wishing to assign the bond and mortgage to Wing, caused the registry of deeds and mortgages to be examined, to enable him to exhibit an abstract of his title under the mortgage; and, in the meantime, he made an arrangement with McDowell, to give him a deed for the premises which he had, by his bond, agreed to convey to him, and to cancel the aforesaid bond and mortgage from McDowell to Tuthill, and take a new bond and mortgage on the same premises from McDowell to himself. The papers were made out; but, before they were executed and delivered, the examination of the registry led to the discovery of Simmons's mortgage, of which both Lawrence and Wing had notice before the arrangement between McDowell and Lawrence was consummated. McDowell's two notes, of $250 each, to Lawrence, were included in the new bond and mortgage. A draft at ninety days had previously been given on Simmons, for one of these notes, which draft was paid by Simmons when it became due. July 23d, 1839, Lawrence assigned the bond and mortgage to Wing. November 8th, 1839, McDowell executed the second mortgage to Simmons.

*D. A. Noble*, for complainant in cross-bill.

*Wing & McClelland and Joy & Porter*, for complainants in original bill and defendants in cross-bill.

*D. A. Nob'e.*

I. The rights of Simmons are superior to those of complainants in original bill, being prior rights.

1. Lawrence, it is true, has his priority for that part of the purchase money ($250) which has not been paid. Subject to this, McDowell's mortgage to Simmons, being the first one made, and being made for money advanced in building the mill on the premises, was superior to all subsequent encumbrances. Even if no mortgage had been made, Simmons had an equitable lien for his advances.

2. Tuthill's mortgage from McDowell cannot be held a prior encumbrance, in right, for purchase money. It was given to secure the purchase money of another part of the premises, and, although covering the land mortgaged to Simmons, does not therefore affect it in the same way as it does the rest.

3. Tuthill's assignees took no better right than he had himself, and, if they claim under the mortgage from McDowell to Tuthill, they must be postponed to Simmons's prior equity. If they claim under the subsequent arrangement, it was made with full and actual notice of Simmons's right.

II. McDowell's rights were such as enabled him to mortgage the interest he obtained under his contract.

1. The vendor is, in equity, owner of the fee from the date of the contract ; the vendee being considered only as trustee for him, till the contract is completed by conveyance. 1 *Sugd. on Vend.* 211, 214; 6 *J. C. R.* 398.

2. Equitable rights may be mortgaged as well as a legal estate. The contract might have been assigned, and whatever is the subject of purchase and sale, may be mortgaged. 2 *Story Com. on Eq.* 289 ; *Wadsworth* v. *Wendell*, 5 *J. C. R.* 224; 1 *J. C. R.* 394.

III. The registry of Simmons's mortgage was constructive notice to all the world of its existence and contents. 1 *Story Com. on Eq.* 392.

This rule applies to equitable as well as legal mortgages. 1 *J. C. R.* 394.

*Joy & Porter.*

I. The mortgage from McDowell to Simmons conveyed no interest in the land described in it; the fee being at the time in Lawrence.

1. McDowell might have assigned or mortgaged the contract, and thus placed Simmons in his place with regard to the premises, but he could not mortgage more than he possessed. Simmons could not foreclose his mortgage as against Lawrence. And his rights under the contract, if that had been transferred to him, would have been subject to contain *conditions*, which must have been complied with, before he could claim its benefit.

2. The mortgage is a nullity. It does not convey, or purport to convey, any thing which McDowell possessed.

3. This case does not stand on the same ground as a mortgage of an equity of redemption. *That* is an *estate* in the land, and not a *mere right.* And here there was not even the right, until the land was paid for.

II. The subsequent arrangement cannot give Simmons any right, or make good his mortgage, which was before a nullity, by enuring to his benefit.

1. The title to the land never having passed from Lawrence until that arrangement, and the deed and mortgage back being one transaction, nothing can step between them to impair or destroy the mortgage security. In such cases of instantaneous seizin, neither judgment, right of dower, process of law, nor any equity, can intervene to destroy the mortgagee's priority.

Where one, who has not procured the title to a piece of property, quit-claims, mortgages, or conveys in any way, *without covenants as to title or warranty*, and subsequently

procures the title, it will not enure to the benefit of the previous quit-claim, mortgage, or conveyance.

*D. A. Noble*, in reply.

I. The mortgage to Simmons was in all respects, in equity, a good and valid mortgage, and conveyed whatever right McDowell had under the bond for a deed.

1. It is of no consequence that the contract was in form a penal bond. An assignee of such an instrument may maintain an action for specific performance ; and the Court will consider it in the nature of an agreement.

2. McDowell was in possession of the land, making valuable improvements, and entitled to retain it on the performance of certain conditions. Most of the conditions have been complied with ;—all except the payment of the $250 note ;— and even this may be fairly claimed to have been removed as a lien on the property, by the final arrangement, which affords good reason for supposing that McDowell's personal responsibility was looked to for payment. In equity then, he had an *interest in the land.*

3. The mortgage conveyed whatever interest McDowell had. The case is similar to that of one who, having an estate for years, purports to convey one for life, where the deed is good so far as regards the estate which the grantor possessed. So, a mortgagee under a receiver's certificate is preferred to the grantee whose deed was subsequent to the patent.

II. As Simmons appears in the suit as a defendant, it is not incumbent upon him to show the same complete performance, which would be required, if he were seeking a specific performance affirmatively. The complainants in the original bill have no right to have his mortgage, or the contract upon which it is based, set aside ; because there

has been a substantial, if not perfect, performance of the requisite conditions.

III. The validity of the Simmons mortgage did not, in equity, depend upon the subsequent deed to McDowell. It was a valid mortgage of the land, upon the doctrine above referred to, that the contract created mutual trusts in the vendor and vendee, by which the latter acquired the estate in the land.

THE CHANCELLOR. The rights of the parties are the same now, as before the agreement was entered into between McDowell and Lawrence, to cancel the Tuthill mortgage, and give one running directly to Lawrence, in its place. All parties had notice of the $3,000 mortgage to Simmons, before the change was made ; and what has taken place since cannot affect his rights.

It is said McDowell might have sold, or mortgaged, his contract, but that he had no interest in the land itself, to mortgage, the title being in Lawrence. At law, a contract for the purchase of land gives the vendee no interest in the land; but the rule is otherwise in equity, which considers the vendor, as to the land, a trustee for the purchaser, and the vendee, as to the money, a trustee for the seller. In equity, the land belongs to the vendee, and may be sold, devised, or encumbered by him, and, on his death, will. descend to his heirs. *Seton* v. *Slade*, 7 *Ves. R.* 265, 274; 6 *Ves. R.* 353. *Champion* v. *Brown*, 6 *J. C. R.* 398. It must be taken, however, subject to the rights of the vendor under the contract. And, McDowell having an equitable interest in the land under the contract, the mortgage from him to Simmons was an equitable mortgage of that equitable interest.

This mortgage was recorded on the day it was executed, and it is insisted that the registry of it was notice, to

both Tuthill and Lawrence, in their subsequent dealings with McDowell, and with each other. The registry of a deed or conveyance required by law to be recorded, when properly registered, is notice to subsequent purchasers of the existence and contents of such deed or conveyance, in equity, as well as at law. If an instrument should be registered, which the law does not require to be registered, the record of it would be notice to no one; for, no person is expected, much less bound, to examine the registry for that which has no business to be there. Our registry law, it seems to me, has reference to conveyances of the legal estate, or interest in law, only, except where a trust is created, or declared, in writing, which, to be notice to subsequent purchasers, the statute requires to be recorded. The language of the statute is: "No bargain and sale, or other like conveyance of any estate in fee simple, or for life, and no lease for more than seven years from the making thereof, shall be valid and effectual against any other person than the grantor, and his heirs and devisees, and persons having actual notice thereof, unless it is made by a deed recorded as provided in this chapter." *R. S. 260.* In *Parkist* v. *Alexander*, 1 *J. C. R.* 397, Chancellor Kent thought the better opinion was, that the registry of an equitable mortgage was notice to a subsequent purchaser of the legal estate. His opinion in that case, however, was based on the peculiar phraseology of the registry act itself. He says: "The statute I have cited speaks of any *'writing in the nature of a mortgage,'* and these words may reach to any agreement creating an equitable encumbrance." The language of our statute is not so broad, and the case of *Parkist* v. *Alexander*, consequently, is no authority that the registry of a mere equitable mortgage, like the one to Simmons, is, under our statute, notice to subsequent purchasers. (1)

Wing *v.* McDowell; Simmons *v.* McDowell.

The mortgage to Tuthill stood on the same footing with that to Simmons, with this difference,·that Simmons's mortgage was prior in time. They were both liens on McDowell's equitable interest in the land, and neither of them was an assignment of the bond for a deed by way of mortgage. Neither Simmons nor Tuthill acquired any legal interest in the bond; neither could have sued Lawrence for a breach of its condition; their interest was purely equitable, not legal, and their remedy against Lawrence, as well as McDowell, such as could be had in a court of equity only. What then were the relative rights of Simmons and Tuthill, under their respective mortgages? The rule in equity on this point is well expressed by Chancellor Walworth, in *Grimstone* v. *Carter*, 3 *Paige R.* 436. He says: "It is the settled doctrine of this Court that, when the equities of the parties are equal, and neither has the legal title, the one who has the prior equity must prevail. Nor will the Court permit the party having the subsequent equity to protect himself by obtaining a conveyance of the legal title, after he has either actual or constructive notice of the prior equity." As between these two mortgages, then, Simmons's mortgage, being prior in time, was prior in right; and this priority was not destroyed, or lost, by the assignment of the Tuthill mortgage to Lawrence without notice of the prior mortgage. Tuthill had no notice of the mortgage to Simmons, when he took his mortgage; and an assignment of it to a third person, without notice, could not give the assignee a better right than Tuthill himself had. Lawrence acquired the right of Tuthill, and nothing more. There was not a union of the legal estate and a subsequent equity *in the same right*, for Lawrence held the legal title *in trust* for McDowell; and, before the agreement was consummated to cancel the Tuthill mortgage and give another in its place, when he ac-

quired the legal estate in his own right, both he and Wing had notice of the Simmons mortgage. The English doctrine of tacking, which, perhaps, would be applicable to such a case, has not been adopted in this country. 1 *Caines Ca.* 112; 3 *Pick. R.* 50; 1 *Hopk. R.* 234; 4 *Kent Com.* 178, 179.

The premises included in Simmons's mortgage must be sold separately, and, out of the proceeds thereof, the $250 note given by McDowell to Lawrence for the purchase money, must first be paid, (the other note having been paid,) and then Simmons's mortgage for $3,000; and, with the balance, if any, and the proceeds of the residue of the mortgaged premises, the Lawrence mortgage must then be paid, and then Simmons's second mortgage.

(1) The registry of a similar mortgage was held not to be notice to subsequent purchasers from the mortgagor, after he had acquired the legal title, in the case of *The Farmers' Loan and Trust Co.* v. *Maltby,* 8 *Paige R.* 361.